2022 IL App (2d) 220052-U
No. 2-22-0052
Order filed October 6, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 96-CC-14 |
| ANDREW A. WALDROP, | ) ) ) | Honorable Keith A. Johnson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We grant the appellate defender's motion to withdraw because there is no arguably meritorious basis for an appeal.

¶ 2  Defendant, Andrew A. Waldrop, appeals from the order of the circuit court of Kane County dismissing his petition under the Postconviction Hearing Act (Act) (720 ILCS 5/122-1 *et seq.* (West 2012)).  The appellate defender moves to withdraw as counsel, asserting that the appeal presents no issue of arguable merit.  We agree.  Thus, we permit counsel to withdraw and affirm the dismissal.

¶ 3                                I. BACKGROUND

¶ 4    In August 1992, defendant pleaded guilty in case No. 92-CF-871 to aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, ¶ 24-1.2) and received a sentence of probation.    On September 6, 1994, the State indicted defendant in case No. 94-CF-1492 for first-degree murder (720 ILCS 5/9-1(a)(2) (West 1994)) and filed a petition to revoke defendant's probation in case No. 92-CF-871.    During an appearance on August 16, 1996, the trial court commented on the record that defendant had stripped naked in the lockup.    When defendant was "sufficiently covered" and came into court, he spat on defense counsel, threatened to sexually assault the prosecutor, and used profanity.    The trial court stated that, based on defendant's acts in open court, it found defendant in criminal contempt and sentenced him to six months' imprisonment.    That term would "be served above and beyond whatever [he] may or may not get" in the two pending cases.    Defendant then swore at the trial court, and the court sentenced him to another six months for criminal contempt.    A short time later, defendant again swore at the trial court and dared it to impose a third six-month term.    The trial court obliged and imposed a third six-month term.    That day, the trial court entered a written order in this case (No. 96-CC-14), finding that defendant was in direct criminal contempt of court for "words and acts in open court."    The court sentenced defendant to three six-month terms, for a combined 18 months' imprisonment, "to be served in addition to any sentence he may receive for [case No. 92-CF-871 or case No. 94-CF-1492]."

¶ 5    In September 1997, case No. 94-CF-1492 proceeded to a jury trial, and defendant was found guilty of first-degree murder.

¶ 6    The trial court held a sentencing hearing on November 12, 1997.    Based on the jury verdict in case No. 94-CF-1492, the trial court revoked defendant's probation in case No. 92-CF-871.    The court sentenced defendant in case No. 94-CF-1492 to 60 years' imprisonment for first-degree murder and resentenced defendant in case No. 92-CF-871 to 15 years' imprisonment for

aggravated discharge of a firearm. The court noted that the 18-month aggregate sentence for contempt "would be added on top of everything else." The court's comment prompted this exchange with defense counsel:

"MR. BUSCH [(DEFENSE ATTORNEY)]: Judge, if I may address that. It would be the Defendant's position that the contempt cases, the time has to be served promptly upon sentencing and therefore the six month sentences would begin at the time the Court imposed them.

THE COURT: If the law applies that way and the Appellate Court says that, then I don't have a problem with that. But as far as I'm concerned, they're consecutive sentences. And if the Appellate Court views that kind of conduct differently and believes that it should be a concurrent, then we'll certainly follow that issue."

¶ 7    That day, the trial court entered separate sets of judgment orders and mittimuses in case Nos. 92-CF-871 and 94-CF-1492. While the court entered no judgment order or mittimus captioned under case No. 96-CC-14, the mittimuses in the other cases stated that defendant would serve an 18-month term for criminal contempt consecutively to the sentences in case Nos. 92-CF-871 and 94-CF-1492.

¶ 8    On November 13, 1997, defendant filed a motion to reconsider his sentences in case Nos. 92-CF-871, 94-CF-1492, and 96-CC-14. Defendant argued that (1) the trial court improperly weighed factors in aggravation and mitigation, (2) the sentences were unduly harsh given the circumstances, (3) the court failed to properly credit defendant for time served, and (4) the court erred in making the sentences consecutive to each other. That same day, the court denied the motion and defendant filed notices of appeal in all three cases. Also, in all three cases, the trial court ordered the preparation of the record and appointed the Office of the State Appellate

Defender (OSAD) to represent defendant. The appeal in case No. 96-CC-14 was docketed as appeal No. 2-97-1120. On August 25, 1998, defendant moved to file a late notice of appeal in case No. 2-97-1120. On September 22, 1998, we denied the motion for lack of jurisdiction. This concluded the appeal (defendant's later motion to dismiss the appeal was denied as moot based on the September 1998 order).

¶ 9 Meanwhile, on January 9, 1998, the trial court entered a mittimus in No. 96-CC-14, specifying that defendant's sentence of 18 months' imprisonment would run consecutively to his sentences in case Nos. 92-CF-871 and 94-CF-1492.

¶ 10 On October 10, 2013, defendant filed a *pro se* postconviction petition under the Act. On February 14, 2014, the trial court advanced the petition to the second stage of proceedings under the Act and appointed counsel for defendant. Counsel filed neither an amended petition nor a certificate under Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) stating that counsel was adopting the *pro se* petition.

¶ 11 On June 5, 2014, the State moved to dismiss the *pro se* petition as, *inter alia*, untimely. On June 29, 2017, the trial court dismissed the petition as untimely. Defendant appealed. The State confessed error, stating that the dismissal must be vacated and the matter remanded for further proceedings because the record contained no Rule 651(c) certificate. Accepting the State's confession of error, we vacated the dismissal and remanded for further second-stage proceedings, including the appointment of new counsel and compliance with Rule 651(c).

¶ 12 On remand, new counsel filed on April 8, 2021, an amended petition and a Rule 651(c) certificate. The amended petition raised four claims.

¶ 13 First, defendant claimed that the trial court erred in entering the January 9, 1998, mittimus in case No. 96-CC-14. Defendant characterized the mittimus as "*ex parte*, as no defense counsel

is listed, nor is the date among those included in the Report of Proceedings." Defendant claimed that, because the trial court did not stay the 18-month sentence for criminal contempt when imposing it on August 16, 1996, defendant began serving that sentence *instanter*. Thus, as of January 9, 1998, he had served nearly the entire 18 months. Defendant asked, "in the interest of justice," for "an order *** striking the *ex parte* order of January 9, 1998." The requested order "would have the effect of acknowledging that he has already served his sentence in the instant case, leaving him to serve the time remaining on his sentences in [case Nos. 92 CF 871 and 94 CF 1492]."

¶ 14    Second, defendant argued that he was entitled to a jury trial before being found in criminal contempt. He noted that, although his acts "all occurred in a short span of time," he was found guilty of "three separate and enumerated acts" and given three sentences that in combination exceeded the maximum that a court can impose for criminal contempt without affording the defendant a jury trial. He relied on the sixth amendment to the United States Constitution (U.S. Const., amend. VI) as interpreted in *Codispoti v. Pennsylvania*, 418 U.S. 506 (1974), and *Bloom v. Illinois*, 391 U.S. 194 (1968), and on article I, section 13, of the Illinois Constitution (Ill. Const. 1970, art. I, § 13).

¶ 15    Third, defendant argued that trial counsel denied him the effective assistance of counsel by failing to include, in the November 1997 motion to reconsider sentence, a specific challenge to the sentences on the contempt findings. Had counsel done so, (1) "he could have brought *** issues ***, specifically the right to trial by jury and possible abuse of discretion, to the attention of the trial court"; (2) "[t]he court would then have had the opportunity to reconsider its ruling in light of the cited constitutional provisions and caselaw"; and (3) "all parties would have understood that

Defendant/Petitioner began serving his sentence on August 16, 1996, obviating the necessity of the instant proceeding."

¶ 16    Fourth, defendant argued that, for the same reasons, appellate counsel was ineffective for failing to timely appeal the contempt finding. Defendant referenced our September 1998 denial of his motion to file a late notice of appeal in appeal No. 2-97-1120.

¶ 17    The amended petition contained no allegations explaining why defendant filed his petition outside the Act's three-year limitations period. See 725 ILCS 5/122-1(c) (West 2012).

¶ 18    On May 24, 2021, the State moved to dismiss the amended petition. The State argued, *inter alia*, that defendant filed the petition beyond the Act's limitations period and did not attempt to excuse the untimeliness by alleging a lack of culpable negligence.

¶ 19    On January 11, 2022, the trial court dismissed the petition as time-barred and did not reach the petition's merits.

¶ 20    Defendant timely appealed, and the trial court appointed OSAD to represent him.

¶ 21                                   II. ANALYSIS

¶ 22    Per *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993), the appellate defender moves to withdraw as counsel. In his motion, counsel states that he read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit. We advised defendant that he had 30 days to respond to the motion. Defendant did not respond.

¶ 23    Counsel discusses three potential issues: (1) whether the trial court erred in dismissing the amended petition as untimely, (2) whether the amended petition had substantive merit, and

(3) whether postconviction counsel provided reasonable assistance in amending defendant's *pro se* petition. We agree with defendant's counsel that all three issues lack arguable merit.

¶ 24 The Act allows a defendant to challenge his or her conviction or sentence because of constitutional violations. See 725 ILCS 5/122-1(a)(1) (West 2020). The Act establishes three stages of review. *People v. Domagala*, 2013 IL 113688, ¶ 32. Here, the trial court advanced the *pro se* petition to the second stage of review, where counsel is appointed, and the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). At the second stage, the State may move to dismiss the petition as untimely. *People v. Perkins*, 229 Ill. 2d 34, 48 (2007). We review *de novo* the second-stage dismissal of a petition. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 25 When defendant filed his *pro se* petition in October 2013, the Act required that he file the petition "no later than 3 years from the date of conviction, unless the petitioner allege[d] facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012). Defendant filed his petition long past the three-year limitations period. "If a postconviction petition is not filed within the limitations period, the Act requires the petitioner to allege facts showing the delay was not due to his or her culpable negligence." *Perkins*, 229 Ill. 2d at 43. The amended petition alleged no reason for being untimely. "Absent allegations of lack of culpable negligence, the Act directs the trial court to dismiss the petition as untimely at the second stage upon the State's motion." *Id.* Given our supreme court's unequivocal direction in *Perkins*, we agree with counsel that it would be frivolous to argue that the trial court improperly dismissed the amended petition as untimely.

¶ 26 We also agree with counsel that the amended petition was substantively devoid of arguable merit. We begin with defendant's claim in the amended petition that the trial court's contempt

findings and sentences were improper. Defendant seemed to suggest in his petition that, because the acts "all occurred in a short span of time," he could not be held in contempt for "three separate acts" and given a combined sentence that exceeded the maximum for a contempt charge that is not tried by a jury. Defendant was mistaken. First, while defendant's contemptuous conduct all occurred within a relatively short period, three separate findings of contempt were appropriate because there were three separate physical acts. See *People v. Brown*, 235 Ill. App. 3d 945, 950 (1992).

¶ 27   Second, defendant was not entitled to a jury trial on contempt. "The right to a trial by jury is a fundamental right guaranteed by both the United States Constitution (U.S. Const., amends. VI, XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 8)." *People v. Foster*, 2022 IL App (2d) 200098, ¶ 28. Defendant relied on the Supreme Court's holdings in *Codispoti* and *Bloom*, which one Illinois appellate decision encapsulates as follows:

> "When the aggregate punishments for a particular course of criminally contemptuous conduct committed in the presence of a judge exceed the parameters of punishments normally imposed for misdemeanors and the punishments are not imposed immediately after occurrence of the contemptuous conduct, the contemnor is entitled to a jury trial as to the contempt charges." *In re Marriage of Betts*, 200 Ill. App. 3d 26, 50 (1990).

"The traditional test for determining whether or not a charged offense is a misdemeanor is whether the penalties exceed $500 or six months' imprisonment." *Id.* In Illinois, six months is the maximum term of imprisonment a court may constitutionally impose without first affording the defendant a jury trial. *McLean County v. Kickapoo Creek*, Inc., 51 Ill. 2d 353, 356 (1972). Thus, *Betts*' holding, put in other terms, is that *if* the contemptuous conduct occurs in the trial court's presence *and* the court immediately imposes punishment, the court can impose aggregate penalties

exceeding six months' imprisonment even without affording the defendant a jury trial. Here, the trial court observed the contemptuous conduct and immediately imposed penalties. Therefore, defendant had no right to a jury trial on contempt.

¶ 28    We turn next to defendant's claim that the trial court erred in issuing the January 9, 1998, mittimus concerning his 18-month contempt sentence. Defendant characterized the mittimus as "*ex parte*" and thus improper. Counsel interprets defendant as implying that the mittimus was void and, therefore, could be challenged at any time. Counsel asserts that the mittimus was not void because, even after the trial court's jurisdiction lapsed, the court retained authority to perform such ministerial acts as reducing a judgment to writing. See *People v. Flowers*, 208 Ill. 2d 291, 306-07 (2003). Counsel is correct. However, defendant also suggested that the January 9, 1998, mittimus signified the trial court's misunderstanding that defendant had not begun serving his sentence for contempt immediately when imposed. Defendant asserted that, because "[t]he court did not order any stay on the sentence; *** Defendant began serving the sentence *instanter*." Thus, by defendant's reckoning, he has already completed his sentence for contempt. Defendant is mistaken.

¶ 29    A sentence commences when the trial court issues the mittimus. *People v. Williams*, 239 Ill. 2d 503, 509 (2011). When, in August 1996, the trial court imposed the 18-month sentence for criminal contempt, the court did not contemporaneously issue a mittimus for that sentence. Therefore, defendant did not begin to serve the contempt sentence then. The November 1997 mittimuses in case Nos. 92-CF-871 and 94-CF-1492 specified that defendant would serve his 18-month term for contempt consecutively to the sentences in case Nos. 92-CF-871 and 94-CF-1492. Not until January 1998 did the trial court issue a mittimus in case No. 96-CC-14. That mittimus, too, specified that defendant would serve his 18-month contempt sentence consecutively to his

sentences in the other cases. Contrary to defendant's position, he has not begun to serve his contempt sentence in case No. 96-CC-14 and will not do so until he completes his sentences in case Nos. 92-CF-871 and 94-CF-1492.

¶ 30    The final two claims in the amended petition were that trial and appellate counsel alike were ineffective for failing to challenge the contempt findings and sentences on the grounds set forth in the prior two claims. To prevail on an ineffectiveness claim, a defendant must establish both that (1) his counsel's conduct fell below an objective standard of reasonableness under prevailing professional norms and (2) he was prejudiced by counsel's deficient conduct, *i.e.*, a reasonable probability exists that the result of the proceeding would have been different absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Since, as we have shown, defendant's challenges to the contempt findings and sentences had no arguable merit, neither counsel was ineffective for failing to pursue them.

¶ 31    The final potential issue is whether postconviction counsel provided reasonable assistance in preparing the amended petition. The right to counsel in postconviction proceedings is not constitutional, but wholly statutory. *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). The Act requires postconviction counsel to provide a reasonable level of assistance. *Id.* To ensure that postconviction counsel provides such assistance (*id.*), Rule 651(c) requires that the record

> "contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

The filing of a facially valid Rule 651(c) certificate raises a rebuttable presumption that postconviction counsel provided reasonable assistance. *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25.

¶ 32    Postconviction counsel here filed a facially valid Rule 651(c) certificate with the amended petition. Thus, a presumption of reasonable assistance arose, and we agree with counsel that the record does not rebut that presumption. Notably, counsel does not discuss whether the amended petition's failure to allege a lack of culpable negligence—an omission compelling dismissal under *Perkins*, 229 Ill. 2d at 43—suggests that postconviction counsel was deficient. Nevertheless, the presumption of reasonable assistance leads us to conclude that counsel was not arguably deficient in that respect. *Perkins* holds that Rule 651(c) requires postconviction counsel "to allege any *available facts* necessary to establish that the delay [in filing the petition] was not due to the petitioner's culpable negligence." (Emphasis added.) *Id.* at 49. "In discharging this duty, counsel must inquire of the petitioner whether there is any excuse for the delay in filing." *Id.* "As a practical matter, any potential excuse for the late filing will often be discovered by speaking with the petitioner." *Id.* We presume that postconviction counsel conferred with defendant about the untimeliness of the *pro se* petition and learned nothing to support an allegation that defendant was not culpably negligent in the late filing. However, we stress that it would have been preferable for postconviction counsel to address the issue of timeliness rather than leave courts to presume that counsel considered the issue. Regardless, what matters for our purposes is that the record does not rebut the presumption of reasonable assistance.

¶ 33                                III. CONCLUSION

¶ 34　　After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit.  Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County.

¶ 35　　Affirmed.